Demetriades v Royal Abstract Deferred, LLC (2018 NY Slip Op 01640)





Demetriades v Royal Abstract Deferred, LLC


2018 NY Slip Op 01640


Decided on March 15, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 15, 2018

Acosta, P.J., Richter, Kapnick, Kahn, Gesmer, JJ.


5987 156478/12

[*1]Alexandros Demetriades, Plaintiff-Respondent,
v
Royal Abstract Deferred, LLC, Defendant-Appellant.


Pryor Cashman LLP, New York (Todd B. Marcus of counsel), for appellant.
Law Offices of Mario Biaggi, Jr., New York (Mario Biaggi, Jr. of counsel), for respondent.



Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered on or about May 5, 2017, which, to the extent appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing plaintiff's breach of contract claim, unanimously reversed, on the law, without costs, and the claim dismissed. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.
In 2009, plaintiff real estate investor sought to sell a property while taking advantage of Section 1031 of the Internal Revenue Code, which allows a seller to defer capital gains taxes on the sale of investment property if that seller uses the sale proceeds to purchase a like-kind replacement property within certain time periods. Plaintiff entered into an "exchange agreement" with defendant, a "qualified intermediary" charged with holding the proceeds until such time that plaintiff located replacement properties and instructed defendant to acquire the ownership interest in the replacement properties.
After the net proceeds from the property sale were deposited with defendant in plaintiff's 1031 account, plaintiff personally faxed defendant documentation, including a schedule identifying certain replacement properties and wiring instructions to be used by defendant in sending the money from plaintiff's 1031 account to purchase a replacement property.
Shortly thereafter, defendant received another set of documents, including a schedule signed by plaintiff, identifying replacement properties, as well as wiring instructions. These documents were sent by one of plaintiff's lawyers, James Kalpakis. Defendant followed the wiring instructions and released funds from plaintiff's 1031 account for the purchase of replacement properties.
In November 2010, plaintiff discovered that the funds released by defendant were not used to purchase the replacement properties, but were paid to entities owned and controlled by Kalpakis, who was later convicted for stealing the money.
Plaintiff filed this action against defendant, as relevant to this appeal, alleging that defendant breached the exchange agreement by transferring the funds from plaintiff's 1031 account upon the instructions of Kalpakis. Plaintiff argued that either the contract, or a subsequent oral instruction, provided that only he (or his daughter-in-law) could direct the release of funds.
While the court correctly found that the contract empowered plaintiff to give instructions to defendant as to who was authorized to initiate wire transfers on his behalf, the contract itself did not, on its face, provide that only plaintiff, and not his attorney, could direct wire transfers. The court erred in finding that issues of fact exist as to whether defendant breached the contract by failing to follow plaintiff's purported orally communicated limiting instructions. The record, at most, includes plaintiff's claim that he communicated such a limitation in connection with a prior exchange agreement. Even if there was credible evidence with respect to the earlier oral limiting instruction, plaintiff admits that he never renewed that instruction with respect to the subsequent exchange agreement, which specifically states any prior oral agreements between the [*2]parties were superseded by the written terms of the agreement.
In the absence of any evidence of limiting instructions, written or oral, providing that defendant was not to transfer funds unless expressly authorized directly by plaintiff (or his daughter-in-law), and not through any attorney or agent who had apparent authority to direct transfers on plaintiff's behalf, that was in effect with respect to the relevant exchange agreement, there is no basis for a breach of contract claim here based on defendant's conduct of transferring the funds upon the instructions of Kalpakis.
Nor can plaintiff sustain a breach of contract claim based on allegations that defendant breached various other provisions of the exchange agreement. The additional breach claims were improperly pled only in opposition to defendant's summary judgment motion, and not in any pleading or amended pleading (see Ostrov v Rozbruch, 91 AD3d 147, 154 [1st Dept 2012]). In addition, at least in the absence of a well-pled cause of action setting forth the relevant breach allegations that are the proximate cause of the damages sought, defendant cannot be held liable in breach of contract for the damages due to a criminal fraud based on the speculation that it might have been able to discover and prevent the fraud had it completed ministerial tasks provided for in the exchange agreement (see Frydman & Co. v Credit Suisse First Boston Corp., 1 AD3d 274 [1st Dept 2003]).
Although defendant purports to appeal the denial of the motion for summary judgment with respect to its counterclaim for attorneys' fees, it failed to make any substantive argument in its appellate briefs on that issue and we decline to consider it.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 15, 2018
CLERK